**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 9:24-mj-08124-WM

**UNITED STATES OF AMERICA**

vs.

**CHRISTOPHER SCHWEIKART,**

    **Defendant.**
_____/

**GOVERNMENT'S MOTION TO AMEND PROTECTIVE ORDER**

**I.  Introduction**

The government files this motion to amend the Court's Order on the Defendant's Motion for Protective Order, which ordered, among other things, that various agencies be prohibited from providing the government information relating to mental health evaluations of the defendant conducted on or after March 16, 2024.  (DE 17).   For the reasons stated below, the government is requesting that the Court amend its order to rescind the prohibition of the sharing of this information, namely, paragraphs 1, 2, and 3 of the Court's order.   The government does not object to paragraph 4 of the Court's order relating to the redaction of information related to jail visitation records.

**II.  Procedural History**

On March 18, 2024 a criminal complaint was filed against defendant Christopher Schweikart ("SCHWEIKART") alleging that on or about March 16, 2024, SCHWEIKART committed first-degree murder within the special maritime or territorial jurisdiction of the United States, in violation of Title 18, United States Code, Section 1111.  (DE 1).   The initial appearance was held on March 19, 2024 and the defendant stipulated to pre-trial detention on

March 22, 2024. (DE 4, 10). Arraignment has been set for April 26, 2024 and indictment is pending.

### III. Defendant's motion and Court order

On March 28, 2024, the defendant filed the instant motion. In it, defense asked the Court to order the following:

a) "the PBCJ and BOP are prohibited from providing to federal prosecutors or investigators the original or copies of any information relating to mental health evaluations of SCHWEIKART conducted on or after March 16, 2024";

b) "the PBCJ and BOP be ordered not to place any evaluation materials in SCHWEIKART 'central inmate file'";

c) "the PBCJ and BOP be ordered not to disclose the existence of any such information regarding mental health evaluations of SCHWEIKART to federal prosecutors or investigators"; and

d) the PBCJ and BOP be ordered not to access SCHWEIKART's visitor logs that contain members of the defense team and potential experts they may retain.

On March 29, 2024, the Court summarily granted the motion without prejudice, stating that "the government can ask the court to reconsider this ruling in the future." The government would like to point out that the four instructions in the Court's order that correspond to the defendant's four requests went beyond the requests made by defense because the Order included the Veterans Affairs Medical Center in West Palm Beach in the list of agencies

prohibited from sharing the records at issue. The defense motion did not include VA records as part of its request.[1]

For the reasons stated below, the government requests that the Court modify its order to allow the government access to mental health records held by the agencies and institutions listed in its Order. The government does not object to paragraph 4 of the Court's order relating to the redaction of information related to jail visitation records. In other words, the government requests that the Court rescind paragraphs 1-3 of the Order in docket entry 17, but keep paragraph 4.

IV.     **Legal Authority and Analysis**

Under FRCP 16(d)(1), a protective order requires "good cause." The government currently has the responsibility to among other things, determine what crimes may have been committed, gather all relevant evidence, identify all potential witnesses, make a charging determination, including whether to seek the death penalty, and prepare for trial. The defendant cites no authority permitting a protective order to interfere with these prosecutorial functions. No case has been cited in which a defendant has prevented the government from receiving records from the BOP, VA, or any other agency that were generated in the ordinary course of the agency's business. The undersigned is unaware of any such case.

First as to the VA records, the government's authority to have access to mental health records held by the VA rests in the statutes that grant authority to the Department of Veterans

---

[1] In fact, at the time of the Court's order, the special agents assigned to investigate this case already had VA records in their custody but had not yet viewed them. Immediately upon receiving the Court's order, the undersigned instructed the special agents assigned to this investigation not to view any of the records specified in the Court Order unless later expressly allowed by the Court.

Affairs, Office of Inspector General ("VA OIG"). The VA OIG was created to investigate crimes that are directed at, and perpetrated against, VA programs and operations. The authority of the VA Inspector General is granted in Chapter 4 of Title 5 of the United States Code. Specifically, Title 5, United States Code, Section 406 states, in relevant part:

> (a) In General.—In addition to the authority otherwise provided by this chapter, each Inspector General, in carrying out the provisions of this chapter, is authorized—
> (1)
> (A) **to have timely access to all records, reports, audits, reviews, documents, papers, recommendations, or other materials available to the applicable establishment[2] which relate to the programs and operations with respect to which that Inspector General has responsibilities under this chapter;**
> (B) to have access under subparagraph (A) notwithstanding any other provision of law, except pursuant to any provision of law enacted by Congress that expressly—
> (i) refers to the Inspector General; and
> (ii) limits the right of access of the Inspector General; and
> (C) except as provided in subsection (i), with regard to Federal grand jury materials protected from disclosure pursuant to rule 6(e) of the Federal Rules of Criminal Procedure, to have timely access to such information if the Attorney General grants the request in accordance with subsection (h);
> (2) to make such investigations and reports relating to the administration of the programs and operations of the applicable establishment as are, in the judgment of the Inspector General, necessary or desirable;
> (3) **to request such information or assistance as may be necessary for carrying out the duties and responsibilities provided by this chapter from any Federal, State, or local governmental agency or unit thereof;**
> (4) **to require by subpoena the production of all information, documents, reports, answers, records, accounts, papers, and other data in any medium (including electronically stored information), as well as any tangible thing and documentary evidence necessary in the performance of the functions assigned by this chapter, which subpoena, in the case of contumacy or refusal to obey, shall be enforceable by order of any appropriate United States district court, but procedures other than subpoenas shall be used by the Inspector General to obtain documents and information from Federal agencies;**
> (5) to administer to or take from any person an oath, affirmation, or affidavit, whenever necessary in the performance of the functions assigned by this chapter, which oath, affirmation, or affidavit when administered or taken by or before an employee of an Office of

---

[2] The term "establishment" includes, among others, the Department of Veterans Affairs. 5 U.S.C. 401(1).

Inspector General designated by the Inspector General shall have the same force and effect as if administered or taken by or before an officer having a seal;

(6) to have direct and prompt access to the head of the establishment involved when necessary for any purpose pertaining to the performance of functions and responsibilities under this chapter;

(7) to select, appoint, and employ such officers and employees as may be necessary for carrying out the functions, powers, and duties of the Office subject to the provisions of this title, governing appointments in the competitive service, and the provisions of chapter 51 and subchapter III of chapter 53 of this title relating to classification and General Schedule pay rates;

(8) to obtain services as authorized by section 3109 of this title, at daily rates not to exceed the maximum rate payable under section 5376 of this title; and

(9) to the extent and in such amounts as may be provided in advance by appropriations Acts, to enter into contracts and other arrangements for audits, studies, analyses, and other services with public agencies and with private persons, and to make such payments as may be necessary to carry out the provisions of this chapter.

5 U.S.C. § 406 (emphasis added).

There is no reason to think—and none cited by the defense—that this statute somehow grants the government the authority to have access to VA records, just not mental health records. Again, the defendant's motion did not even mention VA records.

In terms of the other agencies listed in the Court's order, namely, the Palm Beach County Jail and the Bureau of Prisons, the government submits there is also no legal authority to prevent the government from seeing these materials (should they exist). The defendant cites *Estelle v. Smith*, 451 U.S. 454, 467-68 (1981) as the only authority for his request to withhold records from the government. However, *Estelle* is inapposite. In *Estelle*, the Supreme Court announced an exclusionary rule. The Court held that a capital murder defendant's right against compelled self-incrimination prohibits the state from subjecting the defendant to a psychiatric examination regarding future dangerousness without first informing the defendant that he has the right to remain silent and that anything he says can be used against him at a sentencing proceeding. *See Estelle v. Smith*, 451 U.S. 454, 467-68. Nowhere in *Estelle* did the Supreme

Court suggest that the government was not allowed to be privy to the results of the psychiatric examination prior to the trial. In other words, there is a distinction between the government being allowed to view these records versus whether the records are admissible at trial. The defendant's instant motion is better suited as a motion in limine after both parties have seen the records.

As further example, in *United States v. Loughner*, 782 F. Supp. 2d 829 (D. Ariz. 2011), prior to a competency hearing, the defendant argued that statements in BOP records could not be released because they were protected by the Fifth Amendment when they were "made after the appointment of counsel, and without a re-admonishment of Miranda warnings." The records included "psychological records and reports that were generated pursuant to routine custodial protocols, as well as observations of the defendant's behavior and demeanor in custody that are not private" and "information regarding his behavior while in custody." *Id.* at 831, 833. The court held that the statements were not protected by the Fifth Amendment, stating:

> *Miranda* applies to custodial interrogations—those situations in which questioning of a criminal defendant is designed or reasonably likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 64 L.Ed.2d 297 (1980). Questioning that is "normally attendant to ... custody" is not covered by *Miranda* and does not implicate the defendant's Fifth and Sixth Amendment rights. *Kemp v. Ryan*, 638 F.3d 1245, 1255–56 (9th Cir. 2011). The BOP records contain routine, day-to-day statements of the defendant of the type normally attendant to being in custody. There is no indication that the defendant has been "interrogated" in the *Miranda* sense, nor any hint that jailers have attempted to illegally communicate with him on matters of substance behind his lawyers' backs. *Edwards v. Arizona*, which the defendant cites, is simply not on point.

*Id.* at 833.

The *Loughner* case was cited by another case that held the same thing, namely, *United States v. Wilson*, No. 16-CR-20460, 2020 WL 1429497, at *2 (E.D. Mich. Mar. 24, 2020). The *Wilson* court cited *Loughner* and held:

> Here, no aspect of the competency evaluation included custodial interrogation. Routine psychological records and reports, and observations of Wilson's behavior and demeanor while in custody (including Wilson's statements to Dr. Watkins), were not the result of custodial interrogation subject to the protections of the Fifth Amendment. Accordingly, his statements during the competency assessment and in the writing samples are not protected by the Fifth Amendment.
>
> The disclosure of Wilson's BEMR medical records, Dr. Watkins's correspondence with defense counsel, jail medical records, writing samples, and statements during the competency evaluation to the Government is not barred by the Fifth or Sixth Amendment.

*United States v. Wilson*, No. 16-CR-20460, 2020 WL 1429497, at *6 (E.D. Mich. Mar. 24, 2020)

This Court should hold the same and allow the government to view these records. The defendant would remain capable of challenging the admissibility of the evidence at trial or at any other hearing.

The government's request to have permission to see these records does not prejudice the defendant and allows the government to fulfill its responsibilities. If and when this case goes to trial, the defendant will be able to assert all legal rights he has against the admissibility of evidence. If the defendant raises an insanity defense, admission of evidence related to that defense will be governed by Fed. R. Crim. P. 12.2. When a defendant presents psychiatric evidence on his mental condition at trial, he has no Fifth Amendment privilege against prosecution rebuttal psychiatric evidence on that issue, even if based on the defendant's own self-incriminating statements. *Buchanan v. Kentucky,* 483 U.S. at 422–423 (1987). The parties

do not yet know what materials an expert witness (for the government or the defense) would rely upon when rendering an opinion regarding any such defense, and the materials at issue may well turn out to be extremely important to both sides. Moreover, nothing in the County Jail, VA or BOP records reveals defense attorney work product, attorney/client privileged communications, or anything about defense counsel's strategy.

## V.    Conclusion

For the forgoing reasons, the government should be allowed to view the records at issue and the defendant should be allowed the later opportunity to challenge the admissibility of the evidence at trial or any other hearing.

Respectfully submitted,
MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:    _____/s//_____
Marton Gyires
Assistant United States Attorney
Court ID No.: A5501696
500 South Australian Avenue, 4th Floor
West Palm Beach, FL 33401
Tel.: (561) 820-8711
Email: Marton.Gyires@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will transmit notice to the attorneys of record.

/s/ Marton Gyires
MARTON GYIRES
Assistant United States Attorney